# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT OLLIE, #B-87455, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-01181-JPG |
| | ) |
| MARCUS HODGE, JERRY TANNER, | ) |
| MARK STORM, RUSSELL GOINS, | ) |
| TERRY CHILDERS, BRUCE EUBANKS, | ) |
| S. ERICKSON, BRAD STAFFORD, | ) |
| DANIEL DOWNEN, R. DISMORE, | ) |
| and M. CECIL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Robert Ollie, who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 (Doc. 1) against eleven officials at Lawrence Correctional Center ("Lawrence"). Plaintiff sues each defendant in his or her individual and official capacities for violations of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks injunctive relief and monetary damages (Doc. 1, p. 6).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Specifically, the complaint alleges that eleven Lawrence officials subjected Plaintiff to multiple constitutional deprivations between April 25, 2010, and June 14, 2013 (Doc. 1, p. 7). These officials include Defendants Hodge (warden), Storm (assistant warden), Tanner (correctional officer), Childers (correctional officer), Goins (adjustment committee member), Eubanks (correctional officer), Erickson (lieutenant), Stafford (lieutenant), Downen (counselor), Dismore (food service supervisor), and Cecil (mailroom supervisor).

The complaint traces all of these deprivations back to Defendant Tanner's excessive searches of Plaintiff (Doc. 1, p. 10). Although correctional officers are permitted to search inmates at any time, Plaintiff observed Defendant Tanner and other correctional officers singling out non-Caucasian inmates for more frequent searches. In one instance, Defendant Tanner searched Plaintiff three times in a 2-day period without finding any contraband. In another instance, Defendant Tanner searched Plaintiff, completely, three separate times on one occasion.

Plaintiff filed multiple complaints to address this conduct (Doc. 1, p. 10). In response, Defendant Tanner increased the frequency of the searches. He threatened to send Plaintiff to segregation and took his identification badge for no stated reason (Doc. 1, pp. 10-11). During an inmate altercation, Defendant Tanner attacked Plaintiff by "grabbing, shoving, and assaulting" him, instead of the inmates who were actually involved in the fight (Doc. 1, p. 12).

Plaintiff's grievances, including emergency grievances, were ignored. Defendant Storm spoke with Plaintiff about his concerns on October 28, 2011, but took no action (Doc. 1, p. 11). Defendant Stafford ignored an emergency grievance that Plaintiff later filed. Defendant Hodge did the same. Meanwhile, Defendant Tanner continued to single out Plaintiff for searches.

During one such incident on December 17, 2011, Plaintiff asked nearby correctional officers, including Defendant Erickson, to observe the search (Doc. 1, p. 13). Plaintiff explained that he was not refusing to submit to a search. He asked other officers to search him. Even so, Defendant Tanner issued Plaintiff a disciplinary ticket for disobeying a direct order. Defendant Erickson took Plaintiff to segregation in handcuffs and locked him in a shower stall for five hours without allowing Plaintiff to use the restroom.

Plaintiff's disciplinary hearing on December 21, 2011, was ultimately unsuccessful. Plaintiff attributes this to Defendant Goins' refusal to consider any evidence or witnesses that

3

Plaintiff asked to present (Doc. 1, pp. 13-14). Defendant Goins allegedly falsified paperwork to reflect an investigation and witness interviews that never occurred (Doc. 1, p. 14). As a result of this hearing, Plaintiff received sixty days in segregation and sixty days of C-grade, among other things.

Less than a week later, Defendant Childers issued Plaintiff a disciplinary ticket for threats and intimidation (Doc. 1, p. 15). Plaintiff had been conversing with another inmate on the way to the prison yard, and Defendant Childers ordered him to stop. When he did not, Defendant Childers returned Plaintiff to his cell without exercise. Plaintiff threatened to file a complaint against Defendant Childers for denying him access to outside exercise. In response, he received a disciplinary ticket. Following another unsuccessful disciplinary hearing before Defendant Goins, Plaintiff was suspended from the yard for thirty days and given an additional sixty days in segregation.

Plaintiff appealed the decision. He also filed additional grievances regarding the hearing. Defendants Hodge and Storm ignored the grievances until February 8, 2012, when Plaintiff named them in a complaint (Doc. 1, p. 17). They sent Defendant Stafford and a grievance officer to interview Plaintiff (Doc. 1, p. 18). Defendant Downen warned Plaintiff not to file any more grievances, or his stay at Menard "would be very hard for him." Every subsequent grievance he filed with Defendant Downen was systematically denied and upheld by Defendant Hodge.

Plaintiff received a third disciplinary ticket from Defendant Eubanks, after Plaintiff threatened to file a complaint against him (Doc. 1, p. 21). Defendant Eubanks also confiscated Plaintiff's identification badge and called him names (Doc. 1, p. 20). Following yet another unsuccessful disciplinary hearing, Plaintiff lost his job. Defendant Stafford did not interview

Plaintiff in connection with the related grievance for six months. During an interview with Plaintiff on April 4, 2013, Defendant Stafford said that he wanted to ship Plaintiff and other "trouble makers" out of Lawrence (Doc. 1, p. 21). On June 14, 2013, Plaintiff was transferred to Menard.

During Plaintiff's 120 days in segregation prior to his transfer, correctional officers allegedly engaged in "malicious and sadistic" behaviors aimed at punishing inmates (Doc. 1, p. 16). Plaintiff was denied access to hygiene products for his first two days in segregation (Doc. 1, p. 13). He was only allowed to shower once each week (Doc. 1, p. 16). Even then, the correctional officers would turn off the hot water and turn on the air conditioning during the winter months in order to "deter[] inmate misbehavior." Plaintiff was served inadequate food portions. Defendant Dismore served cold and "unfit" food after letting food trays sit outside during the winter. Defendants Downen, Hodge, and Dismore ignored Plaintiff's grievances addressing these concerns. As a result of these conditions, Plaintiff suffered from significant weight loss, stomach cramps, gastritis, weakness, and unspecified complications with his Hepatitis C (Doc. 1, p. 16).

The complaint also alleges that Defendant Cecil routinely opened Plaintiff's legal and personal mail outside of his presence (Doc. 1, p. 18). Plaintiff filed grievances on February 6th and 27th, 2013, to address the issue (Doc. 1, p. 19). Plaintiff's mail was delayed up to 21-45 days in some circumstances. At other times, it was withheld, destroyed, or lost. He showed the open legal mail to Defendant Storm on February 27, 2013. Nothing was done.

Plaintiff now sues eleven Lawrence officials for violations of his First, Eighth, and Fourteenth Amendment rights. He seeks injunctive relief and monetary damages (Doc. 1, p. 6).

**Discussion**

Plaintiff divided the complaint into six counts. For ease of reference, the Court finds it convenient to incorporate these same counts into the below discussion. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:** Retaliation claim against Defendants Erickson, Tanner, Childers, Eubanks, Downen, Hodge, and Storm for allowing excessive searches in response to Plaintiff's complaints (Doc. 1, pp. 21-22);

**Count 2:** Fourteenth Amendment substantive due process claim against Defendants Tanner, Erickson, Childers, and Eubanks for targeting Plaintiff and other non-Caucasian inmates for excessive searches (Doc. 1, pp. 22-23);

**Count 3:** Fourteenth Amendment procedural due process claim against Defendants Hodge, Storm, Goins, Erickson, Stafford, and Downen for issuing false disciplinary reports, ignoring grievances, failing to investigate them, or failing to conduct a complete and impartial hearing on Plaintiff's false disciplinary tickets (Doc. 1, pp. 23-24);

**Count 4:** Eighth Amendment claims against Defendants Hodge, Dismore, Childers, Erickson, Tanner, and Storm for subjecting Plaintiff to unconstitutional conditions of confinement in segregation that caused health complications (Doc. 1, pp. 25-26);

**Count 5:** First Amendment mail interference claim against Defendants Hodge, Storm, Downen, and Cecil for opening personal and legal mail outside of Plaintiff's presence and delaying delivery of Plaintiff's mail for 21-45 days (Doc. 1, pp. 26-27); and

**Count 6:** Retaliation claim against Defendants Hodge, Storm, Stafford, Goins, Downen, and Erickson for transferring Plaintiff from Lawrence, a medium security prison, to Menard, a maximum security prison (Doc. 1, pp. 28-29).

## Count 1 – Retaliation for Filing Grievances

After carefully considering the allegations in the complaint, the Court finds that it articulates a colorable retaliation claim against Defendants Erickson, Tanner, Childers, Eubanks, Downen, Hodge, and Storm for allowing excessive searches of Plaintiff in response to his grievances (Doc. 1, pp. 21-22). Even though some of the allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

At issue here is whether Plaintiff experienced an adverse action or actions that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 551. This is a question that cannot be resolved at the pleadings stage of this case. Thus, the Court is unable to dismiss this retaliation claim at this time. Plaintiff shall be allowed to

proceed with Count 1 against Defendants Erickson, Tanner, Childers, Eubanks, Downen, Hodge, and Storm.

**Count 2 – Substantive Due Process Claim**

The complaint also articulates a colorable equal protection claim under the Fourteenth Amendment against Defendants Tanner, Erickson, Childers, and Eubanks for targeting Plaintiff and other non-Caucasian inmates for excessive searches (Doc. 1, pp. 22-23). As the Seventh Circuit has stated:

> [T]he "Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers . . . ." *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). A plaintiff "must demonstrate intentional or purposeful discrimination" to show an equal protection violation. *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980) (per curiam). "'Discriminatory purpose' however, implies more than intent as volition or intent as awareness of consequences." *Pers. Adm'r of Mass. v. Feeny*, 442 U.S. 256, 279 (1979). It implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

*David K. v. Lane*, 839 F.2d 1265, 1271-72 (7th Cir. 1988). The complaint states that these defendants singled out non-Caucasian inmates for harassing, excessive searches on the basis of their race. Although the Court takes no position on the ultimate merits of Plaintiff's Fourteenth Amendment equal protection claim, it cannot be dismissed at this early stage. Accordingly, Plaintiff shall be allowed to proceed with Count 2 against Defendants Tanner, Erickson, Childers, and Eubanks.

**Count 3 – Procedural Due Process Claim**

Likewise, the complaint states a viable Fourteenth Amendment procedural due process claim against Defendants Hodge, Storm, Goins, Erickson, Stafford, and Downen for issuing false

disciplinary reports, failing to investigate related complaints, and failing to conduct a complete and impartial hearing on them (Doc. 1, pp. 23-24).

Allegations of false disciplinary reports do not state a claim where due process is afforded. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). The Seventh Circuit Court of Appeals has reasoned that the procedural requirements of a disciplinary hearing protect prisoners from arbitrary actions of prison officials. *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987). Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

In the complaint, Plaintiff complains that these procedural safeguards were not in place, following the issuance of three false disciplinary tickets and the failure to investigate Plaintiff's grievances. At this early stage, the Court will allow Plaintiff to proceed with Count 3 against

Defendants Hodge, Storm, Goins, Erickson, Stafford, and Downen based on the allegedly false disciplinary reports and hearing.

**<u>Count 4 – Eighth Amendment Claims</u>**

The complaint also articulates Eighth Amendment claims against Defendants Hodge, Dismore, Childers, Erickson, Tanner, and Storm for subjecting Plaintiff to unconstitutional conditions of confinement in segregation and for displaying deliberate indifference to his medical needs (Doc. 1, pp. 25-26).

Relevant to Plaintiff's conditions of confinement claim, the Eighth Amendment has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on this claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991).

The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-*

*Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil,* 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). At this stage, the complaint meets the threshold requirements for establishing a conditions of confinement claim, based on the defendants' participation in creating the conditions (e.g., turning on the air conditioner, turning off the hot water, putting food outside to sit, etc.). Accordingly, Plaintiff shall be allowed to proceed with his Eighth Amendment conditions of confinement claim against Defendants Hodge, Dismore, Childers, Erickson, Tanner, and Storm.

Moreover, the complaint suggests that these same defendants displayed deliberate indifference to Plaintiff's serious medical needs. Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).

> Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). The complaint alleges that Plaintiff lost significant weight and experienced other health conditions (i.e., stomach cramping, gastritis, complications with Hepatitis C, etc.) as a result of the defendants' actions. Defendants ignored Plaintiff's grievances addressing these issues. While it is certainly not clear that Plaintiff will prevail on a medical needs claim, he shall be allowed to proceed with this claim against Defendants Hodge, Dismore, Childers, Erickson, Tanner, and Storm at this stage. In summary, Plaintiff shall be allowed to proceed with Count 4 against Hodge, Dismore, Childers, Erickson, Tanner, and Storm.

**Count 5 – Mail Interference**

The complaint also articulates a colorable First Amendment mail interference claim against Defendants Hodge, Storm, Downen, and Cecil for opening mail outside of Plaintiff's presence and delaying delivery of Plaintiff's mail (Doc. 1, pp. 26-27). As the Seventh Circuit has observed:

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005). However, the inadvertent or negligent opening of an occasional legal letter is not actionable. *See, e.g., Bryant v. Winston*,

750 F. Supp. 733 (E.D. Va. 1990). Furthermore, "merely alleging an isolated delay or some other relatively short-term . . . disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment." *Rowe*, 196 F.3d at 782. The complaint alleges frequent, long delays in receiving legal mail that was also opened outside of Plaintiff's presence. Plaintiff claims to have been harmed from these delays. At times, his mail was completely withheld, misplaced, or lost. Under the circumstances, the Court will allow him to proceed with Count 5 against Hodge, Storm, Downen, and Cecil.

**Count 6 – Retaliatory Transfer**

For many of the same reasons that Plaintiff has been allowed to proceed with Count 1, he shall also be allowed to proceed with Count 6 against Defendants Hodge, Storm, Stafford, Goins, Downen, and Erickson, based on their alleged participation in his transfer from Lawrence, a medium security institution, to Menard, a maximum security prison (Doc. 1, pp. 28-29). *See Higgason*, 83 F.3d at 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock*, 102 F.3d at 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell*, 69 F.3d at 1389 (8th Cir. 1995) (retaliatory discipline). The complaint suggests that these defendants retaliated against Plaintiff for filing grievances by transferring him to a maximum security institution. At this early stage in litigation, Plaintiff shall be allowed to proceed with Count 6 against Defendants Hodge, Storm, Stafford, Goins, Downen, and Erickson.

**Pending Motions**

Plaintiff has filed a motion to appoint counsel (Doc. 3), which shall be referred to a United States Magistrate Judge for further consideration.

**Disposition**

**IT IS HEREBY ORDERED** that as to **COUNTS 1, 2, 3, 4, 5,** and **6,** the Clerk of Court

shall prepare for **DEFENDANTS HODGE, TANNER, STORM, GOINS, CHILDERS, EUBANKS, ERICKSON, STAFFORD, DOWNEN, DISMORE,** and **CECIL** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including a decision on Plaintiff's motion to appoint counsel (Doc. 2).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 16, 2013**

*s/ J. Phil Gilbert*
United States District Judge