HodgeIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT OLLIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:13-CV-1181-NJR-DGW |
| | ) | |
| MARCUS HODGE, JERRY TANNER, | ) | |
| MARK STORM, RUSSELL GOINS, | ) | |
| BRUCE EUBANKS, S. ERICKSON, | ) | |
| BRAD STAFFORD, and DANIEL | ) | |
| DOWNEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants Daniel Downen, Eric Erickson, Bruce Eubanks, Russell Goins, Marcus Hodge, Brad Stafford, Mark Storm, and Jerry Tanner on August 3, 2015 (Doc. 87). For the reasons set forth below, the Motion for Summary Judgment is granted.

### INTRODUCTION

Plaintiff Robert Ollie, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Stateville Correctional Center ("Stateville"), brings this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). More specifically, Plaintiff alleges he was targeted for frequent and excessive searches due to his race and, as a result of filing grievances, was retaliated

against as several false disciplinary reports were lodged against him. Following the Court's initial screening and motions for summary judgment on the issue of exhaustion, Plaintiff is proceeding on the following counts:

<dl>

**Count One:** Retaliation claim against Defendants Eric Erickson, Jerry Tanner, and Bruce Eubanks for allowing excessive searches in response to Plaintiff's complaints;

**Count Two:** Fourteenth Amendment Equal protection claim against Defendants Jerry Tanner and Bruce Eubanks for targeting Plaintiff and other non-Caucasian inmates for excessive searches;

**Count Three**: Fourteenth Amendment procedural due process claim against Defendants Marcus Hodge, Mark Storm, Russell Goins, and Eric Erickson for issuing false disciplinary reports, ignoring grievances, failing to investigate grievances, or failing to conduct a complete and impartial hearing on Plaintiff's false disciplinary reports; and

**Count Six**: Retaliation claim against Defendants Marcus Hodge, Mark Storm, Brad Stafford, Russell Goins, Daniel Downen, and Eric Erickson for transferring Plaintiff from Lawrence, a medium security facility, to Menard, a maximum security facility.

</dl>

Defendants filed a Motion for Summary Judgment on August 3, 2015, asserting they are entitled to judgment as a matter of law (Doc. 87). Plaintiff filed his response to Defendants' motion on August 25, 2015 (Docs. 92-95).

## FACTUAL BACKGROUND

Plaintiff's claims stem from the administration of excessive searches by correctional officers at Lawrence that occurred in or around November and December of 2011 (Plaintiff's Dep., Doc. 88-6 ("Plaintiff's Dep."), pp. 6-7). Plaintiff, an African American, was searched on several occasions when he and other African American and Hispanic inmates went to "chow" for lunch, while Caucasian inmates were never

searched (*Id.* at p. 8). Plaintiff filed grievances complaining about the excessive searches, yet nothing was done about his complaints (*Id.* at p. 6).

Subsequently, on December 17, 2011, Defendant Correctional Officer Jerry Tanner, who had a history of provoking and harassing Plaintiff, singled Plaintiff out as he was leaving chow and indicated Plaintiff was going to be searched (Plaintiff's Dep., p. 12; Affidavit of Albert Parker, Doc. 94, p. 1; Affidavit of Plaintiff, Doc. 94, p. 2). Plaintiff told Defendant Tanner that he wanted a lieutenant to come and witness the search (Plaintiff's Dep., p. 12). Defendant Lieutenant Erickson ultimately came over, and it was determined that Plaintiff disobeyed a direct order (*Id.* at p. 13). As a result of this incident, Plaintiff was taken to segregation, and Defendant Tanner issued Plaintiff a disciplinary ticket citing Plaintiff's offense as "304 – Insolence; 403 – Disobeying a Direct Order (Plaintiff's Dep., p. 13; December 17, 2011 Disciplinary Ticket, Doc. 88-8). Plaintiff was issued a copy of the December 17, 2011 disciplinary ticket on the same date, and a hearing was held on December 21, 2011 (December 17, 2011 Disciplinary Ticket; December 21, 2011 Adjustment Committee Report, Doc. 88-9). At his deposition, Plaintiff testified that he was not able to call any witnesses at his December 21, 2011 hearing; however, the Disciplinary Report indicates that Plaintiff requested witness Albert Parker who was called and heard (Plaintiff's Dep., p. 16; December 21, 2011 Report). The Disciplinary Report indicates that Mr. Parker stated that "[Plaintiff] refused to let Tanner pat him down but wanted another C/O to pat him down. Ollie and Tanner don't get along." (December 21, 2011 Report). Plaintiff also provided a statement on his behalf at the hearing, explaining that "C/O Tanner came up behind me and I [Plaintiff] told him

(Tanner) to step away. Tanner told me I was going to be patted down. I told Tanner to let the other C/O pat me down because we don't get along. The Lieutenant was called [sic] I was cuffed up and went to seg." (*Id.*). The Disciplinary Committee, chaired by Defendant Russell Goins, imposed a punishment of two months of "C Grade" and two months of segregation and indicated its decision was based on Plaintiff's statement that he did not want Officer Tanner to search him, as well as the Disciplinary Report that indicated Officer Tanner was completing random pat down searches of inmates exiting dietary, and Plaintiff was given three orders to submit to a pat down and refused to comply (*Id.*). Defendant Warden Marc Hodge signed off on the Disciplinary Committee's decision on December 28, 2011, and Plaintiff was provided with a copy of the decision on January 3, 2012 (*Id.*at p. 2).

Plaintiff testified at his deposition that Defendant Tanner indicated that Plaintiff's placement in segregation and the administration of searches was in retaliation for his filing of grievances (Plaintiff's Dep., p. 17). Defendant Tanner contends, however, that every search of an inmate is conducted in an effort to maintain or restore security and order, and pat-down searches of inmates are conducted on a random basis as they leave dietary (Declaration of Jerry Tanner, Doc. 88-1, ¶¶ 7-8).

While in segregation on his December 17, 2011 insolence ticket, Plaintiff was issued another ticket by Correctional Officer Terry Childers on December 22, 2011, for the offense of "206 – Intimidation or Threats" (December 22, 2011 Disciplinary Ticket, Doc. 88-10). Plaintiff avers that the impetus for the ticket occurred when Officer Childers saw Plaintiff speaking to another inmate while he was going out to the yard, became

unnecessarily involved in the conversation, and then denied Plaintiff exercise and escorted him back to his cell (Plaintiff's Dep., pp. 20-21). According to Plaintiff's deposition testimony, after Plaintiff was escorted to his cell, Officer Childers dropped his keys in Plaintiff's cell, and Plaintiff started laughing at him, stating "you know, you guys sit here and try to punish us–double punish us for these things and here, you know, if I call the lieutenant and show him that I got these keys that you've got–you know, but I'm nice enough to give these keys back to you" (*Id.*). According to the Disciplinary Ticket, however, the ticket was issued after Plaintiff remarked to Officer Childers that "I'm locked up for killin' somebody, I ain't got a problem doin' it again" while being escorted off the segregation yard (December 22, 2011 Disciplinary Ticket).

Plaintiff was served with his December 22, 2011 Disciplinary Ticket on December 26, 2011 (*Id.*). At the bottom of the Disciplinary Ticket is a detachable request form that inmates may use to call witnesses (*See id.*). This request form instructed inmates to "Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing" and provided spaces for the inmate to fill out his name, identification number, date of disciplinary report, and the names of witnesses he sought to call (*Id.*). This form included the following language: "I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date." (*Id.*). The witness request form was not filled out on Plaintiff's December 22, 2011 Disciplinary Ticket (*See id.*); however, Plaintiff contends that he sought to call Lieutenant Oates, but he was never called and never provided testimony for the hearing (Plaintiff's Deposition, p. 23).

On December 27, 2011, a hearing was held on Plaintiff's December 22, 2011 ticket (December 27, 2011 Disciplinary Report, Doc. 88-11). At the hearing, the Inmate Disciplinary Report was read, and Plaintiff stated "I said it." (*Id.*). The Committee, chaired by Defendant Russell Goins, imposed a punishment of two months of "C Grade," two months of segregation, and one month of yard restriction (December 27, 2011 Report). This decision was based on Plaintiff's statement at the hearing, as well as the Disciplinary Report that indicated Officer Childers observed Plaintiff in the segregation yard stating "I'm locked [up] for killin' somebody, I ain't got a problem doing it again." (*Id.*). Defendant Warden Marc Hodge signed off on the Disciplinary Committee's decision on December 30, 2011, and Plaintiff was provided a copy of it on January 5, 2012 (*Id.*).

Plaintiff was issued another ticket on August 10, 2012, this time from Defendant Bruce Eubanks for the offense of "403 Disobeying a Direct Order; 304 Insolence; 310 Abuse of Privileges." (August 10, 2012 Disciplinary Ticket, Doc. 88-12). The ticket was issued by Defendant Eubanks after Plaintiff was observed "talking on the [cell] door" while he was working as a wing porter (*Id.*). Plaintiff was given three orders to lock up, and after the third order was given, Plaintiff went to his cell, came back with his shower supplies, and told Defendant Eubanks that he "wasn't on any fucking door, [he] was going to take [his] shower" (*Id.*).

Plaintiff was served with his August 10, 2012 Disciplinary Ticket on August 11, 2012 (*Id.*), and a hearing was held on August 14, 2012, before the Program Committee (August 14, 2012 Program Committee Report, Doc. 88-13). At the hearing, Perry Barker,

an inmate requested by Plaintiff, was called and heard (August 14, 2012 Program Committee Report). Mr. Barker indicated that Plaintiff and the Officer "had some words" (*Id.*). The Inmate Disciplinary Report was also read, Plaintiff pled not guilty, and Plaintiff stated that he was "being harassed by this Officer" (*Id.*). The Committee, chaired by Kyle Henton, determined that a change in assignment was necessitated (*Id.*). This decision was based on the Inmate Disciplinary Report and Officer Carter witnessing the incident (*Id.*). Defendant Warden Marc Hodge signed off on the Program Committee's decision on August 30, 2012, and Plaintiff was provided with a copy of it on August 31, 2012 (*Id.*).

Subsequently, on June 14, 2013, Plaintiff was transferred from Lawrence, a medium security facility, to Menard Correctional Center ("Menard"), a maximum security prison (Plaintiff's Dep., p. 42). The transfer is the basis for Count Six in this action. Plaintiff testified at his deposition that he was transferred in retaliation for filing grievances (*Id.* at p. 44). Plaintiff indicated that his belief was founded on Defendant Lieutenant Brad Stafford's statement that he likes to "just get rid of you troublemakers" directed at Plaintiff just prior to his transfer (*Id.*).

According to Defendant Marc Hodge, the Warden at Lawrence for the relevant time period, inmate transfers at the time were completed in coordination with the Transfer Coordinator's Office in Springfield (Declaration of Marc Hodge, Doc. 88-2, ¶ 5). Defendant Hodge attests that multiple IDOC facilities closed in 2013 and, as such, it was necessary to transfer inmates between facilities due to bed space limitations (*Id.*). Accordingly, Defendant Hodge explains that Plaintiff was transferred to Menard due to

bed space needs (*Id.*). Indeed, Plaintiff's Transfer Report indicates that the reason for the transfer was due to departmental bed space needs (Offender Transfer Report, Doc. 88-7, p. 2). Defendant Hodge approved Plaintiff's transfer on June 7, 2013, and the Transfer Coordinator approved it on June 13, 2013 (*Id.* at p. 3).

**LEGAL STANDARD**

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to a judgment as a matter of law where the nonmovant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other

citations omitted).

DISCUSSION

## I.     Count One–Retaliation Claim against Defendants Erickson, Tanner, and Eubank

Plaintiff claims that Defendants Erickson, Tanner, and Eubanks retaliated against him for filing grievances by subjecting Plaintiff to excessive pat-down searches. Defendants Erickson, Tanner, and Eubanks argue they are entitled to judgment as a matter of law because there is no evidence they subjected Plaintiff to excessive searches in retaliation for engaging in protected conduct.

While it is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution, *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), the Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has articulated that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a *prima facie* case, the plaintiff must produce evidence that his speech was at least a motiving factor of the defendant's

decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

The evidence before the Court is not sufficient for Plaintiff to make his *prima facie* case for retaliation. While it is undisputed that Plaintiff filed grievances during his incarceration at Lawrence, and the filing of the same is a recognized, protected First Amendment activity, *see DeWalt*, 224 F.3d at 618, the evidence, when viewed in the light most favorable to Plaintiff, does not demonstrate that Plaintiff suffered a deprivation that would deter First Amendment activity in the future.

The standard for a retaliation claim is whether the retaliatory act would "deter a person of ordinary firmness" from exercising their First Amendment rights. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *see also Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). Not every instance of retaliatory conduct amounts to a constitutional violation. As the Seventh Circuit noted in *Bart*, "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Id.* Indeed, threats of violence by prison guards have been held *not* to amount to retaliation. *See Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008); *see also Boclair v. Beardan-Monroe*, No. 10-cv-978-SWC, 2012 WL 3835874 (S.D. Ill. Sept. 4, 2012).

Here, Plaintiff contends that the excessive searches he endured constituted a

constitutional deprivation that would deter First Amendment activity. The only evidence of the administration of any searches is Plaintiff's statement that he was searched "several times" in November and December 2011 and, on one occasion, he was searched "three times in a row" while he was going in and out of the chow hall (Plaintiff's Dep., pp. 9-10). During this incident, Plaintiff testified that the searches were conducted by Defendant Tanner, and then later by Defendants Eubanks and Childers (*Id.* at pp. 10-11). Plaintiff offers no further details regarding how often searches were conducted, by whom the searches were conducted, or the manner in which they were conducted. Accordingly, the evidence before the Court is bereft of any indication that the searches administered by Defendants were "excessive" insofar as Plaintiff only provides that he was searched "several" times, and the searches were conducted while Plaintiff was "going in and out of the chow hall" (*Id.* at p. 10). Importantly, the Seventh Circuit recognizes that prison officials enjoy "considerable deference" to run their institutions and searches are incidental to incarceration. *See Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694, 697 (7th Cir. 1998). Moreover, at Lawrence, pat-down searches of inmates were regularly conducted on a random basis as they left dietary to prevent inmates from leaving with food items or contraband (Declaration of Jerry Tanner, Doc. 88-1, ¶¶ 6, 8; *see also* Declaration of Eric Erickson, Doc. 88-3, ¶¶ 6-7; Declaration of Bruce Eubank, Doc. 88-5, ¶¶ 6, 8). It is apparent to the Court that if physical and verbal harassment do not deter ordinary prisoners from filing grievances, the administration of routine pat-down searches was not going to do so either. Accordingly, Defendants Erickson, Tanner, and Eubanks are entitled to judgment as a matter of law as to Count One.

II.     **Count Two–Fourteenth Amendment Equal Protection claim against Defendants Tanner and Eubanks**

Plaintiff asserts that Defendants Tanner and Eubanks targeted Plaintiff and other non-Caucasian inmates for searches in violation of the Equal Protection Clause. Defendants Tanner and Eubanks argue they are entitled to judgment as a matter of law on Plaintiff's Equal Protection claim as there is no evidence that race was a factor in any of their searches, and Plaintiff failed to establish he was treated less favorably than any other similarly situated group.

Although prisoners give up many rights of citizenship, they "do not surrender their rights to equal protection at the prison gate." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988), *cert. denied*, 488 U.S. 1047 (1989). The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a directive that all persons similarly situated should be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Unless it is narrowly tailored to serve a compelling state interest, racial discrimination by state actors violates the Equal Protection Clause. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citing *Washington v. Davis*, 426 U.S. 229, 239-42 (1976); *Indianapolis Minority Contractors Ass'n v. Wiley*, 187 F.3d 743, 752 (7th Cir. 1999)). To state an equal protection claim, a plaintiff must establish that a state actor treated him differently than persons of a different race and that the state actor did so purposefully. *Id.* Discriminatory purpose implies more than intent as volition or intent as awareness of consequences; rather, it implies that the actor singled out a particular

group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (citation omitted).

In this instance, Plaintiff's Equal Protection claim is founded on Plaintiff's testimony that he, as well as other African Americans and Hispanic inmates, were regularly searched when they went to lunch while Caucasian inmates were not searched (Plaintiff's Dep., p. 8). Plaintiff testified that he did not know what the officer's motives were (*Id.* at p. 9). Importantly, the evidence before the Court is devoid of any particularities regarding the searches complained of; more specifically, Plaintiff has not clearly identified what defendants were involved in the searches, or when, where, or how they were conducted. Plaintiff has merely made conclusory allegations against Defendants Tanner and Eubanks without providing any evidence whatsoever to establish they were involved in the alleged constitutional deprivation. Moreover, while the Court acknowledges Plaintiff filed a grievance complaining about Defendant Tanner "harassing black and Hispanic inmates as they leave the dining area," these statements are hearsay and cannot be considered. *See Eisenstadt v. Central Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial"). Accordingly, the evidence before the Court is not only insufficient to establish personal involvement of Defendants Tanner and Eubanks in the alleged constitutional deprivation, *see Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), but it is also insufficient to establish that Defendants purposefully treated Plaintiff and other African Americans and Hispanics differently than persons of a

different race. For these reasons, Defendants Tanner and Eubanks are entitled to judgment as a matter of law as to Count Two.

### III.   Count Three-Fourteenth Amendment procedural due process claim against Defendants Hodge, Storm, Goins, and Erickson

### A.  Defendants Warden Marc Hodge and Assistant Warden Mark Storm

Plaintiff's procedural due process claim against Defendants Hodge and Storm relates to their alleged failure to respond to, or investigate, grievances. It is well settled that inmates have no constitutional right or other guarantee to have their grievances investigated to their satisfaction or even to obtain a response to their grievances. The purpose of the grievance system is to provide an opportunity for the informal resolution of problems and minimize the need for litigation. In other words, a prison official's failure to follow the institution's grievance procedure or to sustain a grievance simply does not give rise to a constitutional claim. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *see also Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). As Plaintiff's claims against Defendants Hodge and Storm relates to their handling of grievances, they are entitled to judgment as a matter of law as to Count Three.

### B.  Defendant Russell Goins

Plaintiff avers that he was not afforded due process at his disciplinary hearings chaired by Defendant Russell Goins. Defendant Goins contends that Plaintiff did not have a liberty interest to support a due process claim and, in any event, Plaintiff was afforded all required due process protections.

Generally, Plaintiff complains that the disciplinary committee, chaired by Defendant Goins, failed to conduct a complete and impartial hearing on false disciplinary tickets and, as such, he was subjected to punishment including placement in segregation and demotion to "C Grade" status. More specifically, Defendant Goins was the chair of the disciplinary committee on December 21, 2011, when Plaintiff's December 17, 2011 ticket issued by Defendant Correctional Officer Tanner was heard, and he was also chair of the committee on December 27, 2011, when Plaintiff's December 22, 2011 ticket issued by Correctional Officer Childers was heard. For each of the tickets, the disciplinary committee imposed a punishment of two months of segregation and two months of "C Grade." Also, for the December 22, 2011 ticket, a one month yard restriction was imposed.

Although incarceration necessarily makes many rights and privileges of ordinary citizens unavailable, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). In particular, prisoners may not be deprived of life, liberty, or property without due process of law. *Id.* at 556 (citations omitted). In substantiating a due process claim, a plaintiff must establish that: (1) there was a protected interest at stake that necessitated the protections demanded by due process; and (2) the disciplinary hearing process was in accordance with procedural due process requirements.

With respect to the first showing, a liberty interest only exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of life." *Sandin v.*

*Conner*, 515 U.S. 472, 484 (1995). "The Due Process Clause does not necessarily protect prisoners against the imposition of disciplinary segregation," *Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997) (citation omitted); rather, courts assess whether disciplinary segregation amounts to a constitutional violation by looking to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Relatively short terms of segregation, such as those at issue here, rarely give rise to a prisoner's liberty interest. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (citations omitted). Based on the evidence before it, however, the Court cannot conclude that no genuine issue of material fact exists as to whether Plaintiff's placement in segregation was an "atypical and significant hardship." Defendants have not provided the Court with evidence detailing and comparing a prisoner's placement in disciplinary segregation and discretionary segregation. While the Court acknowledges that Plaintiff also has failed to provide much evidence concerning the same, he has stated that the food portions in disciplinary segregation were reduced and, as a result, he suffered weight loss and various health ailments (Plaintiff's Dep., p. 32). As there are genuine issues of material fact precluding the Court from finding there was not a protected interest at stake that necessitated protections demanded by due process, the Court considers whether the disciplinary hearing process was in accordance with procedural due process requirements.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty-four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body;

(3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or its correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *Wolff*, 418 U.S. at 563-69; *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

With regard to the first requirement, it is well settled that an inmate must be provided with written notice of the claimed violation at least twenty-four hours prior to the hearing. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). The twenty-four hour notice requirement is designed to allow "the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. Plaintiff makes no claim that he was not provided with the requisite notice for either his December 21 or December 27, 2011 hearings. Accordingly, Plaintiff's hearings chaired by Defendant Goins met constitutional muster as to the first due process requirement.

With regard to the second due process requirement, Plaintiff complains that he was not afforded a "fair and impartial hearing" without providing the Court a scintilla of evidence to elucidate or support his proposition. While the Court acknowledges that Plaintiff's description of events that were the impetus for his December 2011 tickets differed from the events described on the tickets themselves, these inconsistencies do not implicate Defendant Goins and the process undertook by the disciplinary committee. Importantly, Plaintiff has neither argued, nor presented evidence, that Defendant Goins was aware of any such inconsistencies during the hearings; rather, the evidence establishes that Plaintiff appeared in person before Defendant Goins and Officers Eldon Cooper and Jeffrey Molenhour, individuals who were not involved in the incidents at

issue, as due process requires. Accordingly, the Court finds that Plaintiff's hearings met constitutional muster as to the second due process requirement.

With regard to the third requirement concerning an inmate's right to call witnesses, Plaintiff claims that he sought to call witnesses at his December 2011 hearings, but to no avail. The record is bereft of evidence indicating what witnesses Plaintiff attempted to call and in what manner he attempted to call them. The record does reflect, however, that inmate Albert Parker was called during Plaintiff's December 21, 2011 hearing, at the request of Plaintiff (December 21, 2011 Disciplinary Report, Doc. 88-9). Also, with regard to his December 27, 2011 hearing, Plaintiff's relevant ticket, which included a detachable witness request form, was never filled out by Plaintiff (*see* December 22, 2011 Disciplinary Ticket, Doc. 88-10). Therefore, based on the evidence before the Court, it is apparent that Plaintiff had the opportunity to request witnesses at his December 2011 hearings. As such, Plaintiff received the process he was due with regard to his right to call witnesses.

As mentioned above, the final due process requirement afforded to each inmate is "a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 545. Due process is violated when a written statement as to the evidence relied on and the reason for the disciplinary action is not provided. *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981). The statement of reasons for the decision guarantees that being found guilty does not violate the inmate's substantive due process rights by ensuring that guilt is found by the appropriate quantum of evidence. *Id.* at 1287 (citations omitted). The kind of justification required to

satisfy the constitutional minimum varies from case to case depending on the severity of the charges, the complexity of the factual circumstances, and the proof offered by both sides. *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987). A less complicated, relatively simple case may satisfy the written explanation requirement by merely stating the board believed the contents of the conduct report. *Id.* Importantly, "[h]igh discretion is afforded to decisions of prison disciplinary committees for they often must act swiftly and on evidence that would be insufficient in less exigent circumstances." *Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Whitford v. Boglino*, 63 F.3d 527, 537 (7th Cir. 1995) (quoting *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 456 (1975)). Moreover, the written statement requirement is not onerous and need only illuminate the evidentiary basis and reasoning behind the decision. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (citations omitted).

Although Plaintiff does not specifically claim that this particular requirement was not met, the Court, in an abundance of caution, considers the same, as Plaintiff asserts that his hearings were not "fair and impartial." With regard to his December 21, 2011 hearing, the Final Summary Report issued by the Disciplinary Committee explained its basis for the decision as follows:

> Based on Inmate Ollie #B87455 statement that he did not want Officer Tanner to pat search him but he would let another Officer pat him down. Based on IDR that Officer Tanner was completing random pat down searches of Inmates exiting Dietary. Ollie was given three orders to submit to a pat down and refused to comply. Ollie stated "No, you ain't searching me." Based on Officers Rousch and C. Tanner witnessing the above incident. Inmate was identified by his state ID (Doc. 88-9).

The Disciplinary Committee's written basis for its decision clearly indicates that it relied upon Plaintiff's statement, the incident report, and witnesses of the incident. Importantly, Plaintiff's statement corroborates the incident report, as both indicate that Plaintiff refused to allow Officer Tanner to search him. Although the Disciplinary Committee's written decision may not be as detailed as Plaintiff would like, it is sufficient to pass constitutional muster, as it clearly delineates the evidence relied upon in reaching its decision and sufficiently ensures that the committee did not act arbitrarily, but rather, acted reasonably by virtue of the evidence before it.

With regard to the December 27, 2011 hearing, the Final Summary Report issued by the Disciplinary Committee explained its basis for the decision as follows:

> Based on Inmate Ollie #B87455 statement that he said it. Based on IDR that while running in seg yard Officer Childers observed Ollie stating "I'm locked for killin' somebody, I ain't got a problem doing it again. Inmate was identified by his state ID (Doc. 88-11).

The Disciplinary Committee's written basis for its decision clearly indicates that it relied on Plaintiff's own admission, as well as the incident report, in reaching its decision. Again, although the Disciplinary Committee's written decision may not be as detailed as Plaintiff would like, it is sufficient to pass constitutional muster, as it clearly delineates the evidence relied upon in reaching its decision and sufficiently ensures that the committee did not act arbitrarily, but rather, acted reasonably by virtue of the evidence before it.

For these reasons, Defendant Goins is entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment due process claim.

## C.  Defendant Erickson

Plaintiff's due process claim against Defendant Erickson is limited to his involvement in the incident occurring on December 17, 2011 involving Defendant Tanner. Specifically, Plaintiff asked Defendant Erickson to come over and witness Defendant Tanner and watch him being searched. According to his Complaint, Defendant Erickson then took Plaintiff to segregation and made him wait in a shower stall for five hours while Defendant Tanner wrote a disciplinary ticket (Plaintiff's Complaint, Doc. 1, ¶¶ 53-56). These facts, even when taken in a light most favorable to Plaintiff, do not establish a due process violation. As discussed above, the ticket issued by Defendant Tanner was heard before the Disciplinary Committee on December 21, 2011, in compliance with due process requirements. Moreover, Plaintiff's placement in segregation for the four days prior to his hearing does not create a liberty interest requiring due process protections. Accordingly, Defendant Erickson is entitled to judgment as a matter of law as to Count Three.

## IV.    Count Six-Retaliation claim against Defendants Hodge, Storm, Stafford, Goins, Downen, and Erickson

Plaintiff asserts that Defendants Hodge, Storm, Stafford, Goins, Downen, and Erickson retaliated against him by transferring him from Lawrence, a medium security facility, to Menard, a maximum security facility, on June 14, 2013. Defendants contend that Plaintiff was not transferred to Menard in retaliation for his engaging in protected conduct. Rather, Defendants assert that Plaintiff was transferred due to bed space needs, following the closure of multiple IDOC facilities in 2013.

As mentioned above, the Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, as previously mentioned, the Seventh Circuit has articulated that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a *prima facie* case, the plaintiff must produce evidence that his speech was at least a motiving factor of the defendant's decision to take retaliatory action. *Id.* More specifically, Plaintiff must "show through *specific evidence* that a triable issue of fact remains." *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) (citations omitted and emphasis added). At this stage, it is not enough for Plaintiff to state his subjective belief that he was the subject of retaliation. *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 700 (7th Cir. 2002) (citing *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995)). Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

Here, it is undisputed that Plaintiff filed a number of grievances while incarcerated at Lawrence, and the filing of grievances is a protected First Amendment activity. It is further undisputed that Plaintiff was transferred from Lawrence, a medium security facility, to Menard, a maximum security facility, in June 2013. Such transfer may be considered a deprivation that would deter First Amendment activity. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (prison transferred for exercising his right of access to the courts has claim under 42 U.S.C. § 1983). These findings alone, however, are not sufficient to make a *prima facie* case for retaliation at this stage. Plaintiff's evidence must be sufficient to also show that his filing of grievances was at least a motivating factor in Defendants' alleged retaliatory action—transferring Plaintiff from Lawrence to Menard. Plaintiff may meet his burden by presenting either direct or circumstantial evidence. *Id.* Direct evidence is evidence which will prove a particular fact without reliance upon inference or presumption, while circumstantial evidence is evidence from which a trier of fact may infer that retaliation occurred, including suspicious timing or ambiguous oral or written statements. *Id.* (quotations and citations omitted).

Here, Plaintiff has offered no direct evidence that Defendants acted with a retaliatory motive. Plaintiff merely states that he had not violated any prison policies or rules and did not have any disciplinary actions taken against him at Lawrence, so there was no reason he should have been transferred to a maximum security institution (*see* Plaintiff's Complaint, Doc. 1, ¶ 163). Also, at his deposition, Plaintiff asserted that immediately preceding his transfer Defendant Stafford told Plaintiff that he "like[s] to just get rid of you troublemakers" (Plaintiff's Dep., p. 44). This statement, coupled with

the fact that he had filed grievances and was in the process of filing this lawsuit around the time he was transferred, is the entirety of the circumstantial evidence presented by Plaintiff to establish Defendants' retaliatory motive.

With regard to the issue of timing, the Seventh Circuit has held that a plaintiff's reliance on suspicious timing to establish a *prima facie* retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). The adverse action must follow "close on the heels" of the protected expression, and the plaintiff must show that the person who took the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 966.

Here, there is no evidence to establish that Defendants Storm, Stafford, Goins, Downen, and/or Erickson were aware that Plaintiff had filed grievances or was planning on initiating this lawsuit. Moreover, these Defendants had no part in overseeing inmate transfers or deciding whether an inmate would be transferred, as that decision is made by officials further up the administrative chain of command (Declaration of Eric Erickson, Doc. 88-3, ¶ 8). Indeed, inmate transfers within the IDOC are completed in coordination with the Transfer Coordinator's Office in Springfield, Illinois (Declaration of Marc Hodge, Doc. 88-2, ¶ 5).

Further, although Defendant Hodge was aware of Plaintiff's filing of grievances and had a role in approving his transfer, Defendant Hodge has provided evidence, by way of affidavit, that Plaintiff was not transferred in retaliation, but rather, was transferred due to bed space needs following the closure of multiple IDOC facilities in

2013 (Marc Hodge Declaration, ¶ 5). A review of Plaintiff's transfer sheet prepared on June 14, 2013, also states that the reason for the transfer was "bedspace" (Transfer in Review Sheet, Doc. 88-7, p. 2). Based on these facts and the evidence before the Court, Plaintiff's speculation regarding Defendants' motive cannot overcome the contrary evidence that Defendants' actions were not motivated by retaliation. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Accordingly, the Court finds that Defendants are entitled to summary judgment as a matter of law as to Count Six.

### CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Daniel Downen, Eric Erickson, Bruce Eubanks, Russell Goins, Marcus Hodge, Brad Stafford, Mark Storm, and Jerry Tanner (Doc. 87) is **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff, and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:   December 10, 2015**

s/   Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**